HARRY ROBERTS et al., Appellees, v. MADISON COUNTY et al., Appellants.

HIGHWAYS: Destroying Undercrossing for Stock. Passageways under public highways, though long used by landowners as runways for stock (in instant case, some 15 years), may, in the construction of highway improvements, be replaced by lesser openings, in the absence of some definite, legal *reservation* by the landowner of right to have the openings maintained as such runways.

*Appeal from Madison District Court.*—LORIN N. HAYS, Judge.

MAY 20, 1918.

SUIT in equity to restrain the board of supervisors from removing a bridge under which plaintiffs claim a right to a passway for stock, and to substitute a small concrete culvert. Decree as prayed. Defendants appeal.—*Reversed*.

*Phil R. Wilkinson,* for appellants.

*Jno. A.* and *W. T. Guiher,* for appellees.

STEVENS, J.—The plaintiff Harry Roberts owned the fee, and his coplaintiff, Mary Roberts, the life use, of a tract of 120 acres in Madison County. About June 28, 1901, Wesley Roberts, father of Harry and deceased husband of Mary Roberts, who was then the owner thereof, with others filed a consent petition for a highway which crossed a part of the above tract, the petitioners specifically waiving claims for damages. The highway was established and opened as prayed. At a point where the same crossed the Roberts tract, there was a small gulley, or ravine, over which the bridge in controversy was constructed. Piling was driven in the ground on each side of the ravine, and planks were nailed thereto in such a manner as to support the dirt approaches to the bridge. A plank floor was placed on stringers, leaving an opening under the bridge through which stock passed from one side of the highway to the other. The highway divided a pasture upon the Roberts' premises, leaving about an equal acreage on each side. There was a perpetual spring on the east side of the highway, which supplied water for the stock in the pasture. Shortly after the bridge was erected, Roberts built fences on each side of the highway, securely attaching the wire on each side of the bridge to the plank abutments. The opening left under the bridge in question, and another somewhat similar, but, we gather from the evidence, smaller opening, which has also been closed, furnished the only way for stock to pass from one side of the highway to the other, and for the stock on the opposite side to reach a spring, used for watering purposes. The bridge and wire fence were maintained as constructed, until shortly prior to the commencement of this suit, when, plaintiffs allege in their petition, the defendant board of supervisors was threatening to remove the bridge and substitute therefor a small concrete culvert, thereby destroying the passway under the bridge.

It is further alleged in plaintiffs' petition that Wesley

Roberts gave the right of way for the road, upon an understanding and agreement that a bridge would be constructed and maintained at the point in question, with sufficient capacity thereunder to provide a suitable passway for stock; and this suit is brought to enjoin the defendants from removing the bridge and placing a small culvert over the ravine.

No direct evidence of an agreement between Wesley Roberts and the board of supervisors was offered upon the trial. The former members of the board of supervisors, who were called as witnesses, testified that they had no recollection of a conversation or agreement of any kind with him relative to the construction of the bridge or its maintenance so as to provide a passway thereunder for stock. Plaintiffs relied largely upon circumstances, to make out their claim. While there were circumstances shown in evidence that are somewhat persuasive, they fall far short of establishing an agreement on the part of the county to construct and maintain the passageway as claimed. It is argued that Wesley Roberts had no direct interest in the establishment of the highway; that he received no compensation for the land taken; that he was permitted to attach his fence to the bridge abutments, thereby providing a passway under the bridge for his stock, which was the only way it could pass from one side of the highway to the other; that defendants have permitted the fence to remain as constructed, and the opening under the bridge to be used as a passway for stock, ever since the bridge was constructed; and that it is extremely improbable that Roberts would, without compensation, have consented to a highway across his land, which divided his pasture, without a definite agreement or understanding that a passway would be left under the bridge of sufficient size to permit his stock on the opposite side of the road to have access to the spring.

The dimensions of the bridge are not shown, nor does

it appear from the evidence that same was constructed with a view to providing a passway for stock. So far as we are able to ascertain from the record, the bridge was no larger than was reasonably necessary to meet the requirements of the highway at this point and provide an adequate water-way; nor does it appear from the record that same was not constructed in the usual and customary manner of constructing bridges across similar ravines. So far as the evidence discloses, it may have been understood by Roberts that the necessary result of the construction of the usual and ordinary bridge across the ravine would be to provide the opening, which has been used as a convenient passway for stock since the bridge was built, and that no agreement or understanding with the officers of defendant county was necessary. Since the bridge was erected, public officers, charged with the construction of bridges and care of highways, have, doubtless, found that small, concrete culverts, or concrete bridges, are more economical to maintain; and it is a matter of common knowledge that they are quite generally being substituted for structures of the kind in question. In the absence of evidence tending to show an agreement on the part of the board of supervisors to erect and maintain the bridge in a manner to provide a passway thereunder for the stock, we would hardly be justified in holding that the present opening must be maintained. An agreement that the opening was to be left and perpetually maintained for the benefit of the landowner, cannot be inferred merely from the circumstances here shown. Perhaps a careful and prudent owner, realizing the importance of a passway for stock across or under the highway, would have made an agreement to that effect, and it may be quite improbable that Wesley Roberts would have granted the right of way without compensation, unless some obligation was assumed by the county to maintain such opening; but this, with the other circumstances shown, would not justify the

court in holding that there was such an agreement. We cannot infer therefrom that an agreement was made to that effect with the board of supervisors, or that the terms thereof required the maintenance of such opening.

Counsel for appellee rely upon *Agne v. Seitsinger,* 104 Iowa 482. The circumstances in that case were quite similar to those in the case at bar, except that the owner, who granted the right of way, reserved, in the petition, the right to attach his fence to the bridge abutments. The court emphasized this reservation, and held that the only reasonable purpose thereof was to provide an opening for stock to pass under the bridge, and that the real reservation intended must have been of a passway for that purpose. In the case at bar, the consent petition contained no reservation or condition whatever. No evidence was offered tending to show a reservation or agreement, as claimed.

It is also argued by counsel that a prescriptive right to have the opening maintained has been gained by the owner of the land, by virtue of the long attachment of the wire fence to the bridge abutments and the use of the passway, with the knowledge and acquiescence of the public. The public made no use of the opening, and stock passed through the same as a convenience, and the only way from one part of the pasture to the other. There was no reason why stock should not pass under the bridge. The public had no interest in the opening under the bridge except to provide a necessary waterway for plaintiff's land, and the attachment of the fence to the abutments by Roberts was a mere matter of convenience to him; but same was in no wise adverse to the public, and he acquired no right against it thereby. The board of supervisors had the right to remove the structure and provide a less expensive bridge, and one which may be more economically maintained.

We are unable to agree with the finding of the court be-

low, and its judgment and decree are, therefore,—*Reversed.*

PRESTON, C. J., WEAVER and GAYNOR, JJ., concur.